UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN GARRETT WILLIAMS,

                 Plaintiff,                         Case No. 08-13470

vs .                                         DISTRICT JUDGE JOHN FEIKENS

MICHAEL J. ASTRUE                MAGISTRATE JUDGE STEVEN D. PEPE
COMMISSIONER OF
SOCIAL SECURITY,

                 Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.**     **BACKGROUND**

Plaintiff brought this action under 42 U.S.C. § 405(g) to challenge a final decision of the Commissioner denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  Both parties have filed motions for summary judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the following reasons, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED** and Defendant's motion for summary judgment be **GRANTED**.

     **A.**     **Procedural History**

Plaintiff protectively applied for DIB on August 26, 2004, alleging that he had been disabled since October 24, 2002.  After Plaintiff's DIB claim was initially denied on March 22, 2005 (R. 33), a hearing was held on June 14, 2007 before Administrative Law Judge Ethel Revels ("ALJ") (R. 298-327).  Plaintiff was represented by attorney Evan Zagoria.  Vocational

1

Expert Dr. Lois Brooks ("VE") also testified (R. 321-327).

In a November 26, 2007, decision, ALJ Revels concluded that Plaintiff was not under a disability as defined by the Act because Plaintiff was able to perform work that exists in significant numbers in the national economy (R. 23-31).  On April 17, 2008, the Appeals Council denied Plaintiff's request for review (R. 12-14).  On July 14, 2008, the Appeals Council again denied Plaintiff's request for review after having received additional evidence, thus making it the final decision of the Commissioner (R. 8-10).

**B.**      **Background Facts**

**1.**      ***Plaintiff's Hearing Testimony***

Plaintiff was 39 years old at the time of the hearing, and lived with his parents and his two minor daughters (R. 301).  He completed high school, and took some college courses, but never received a degree, nor had he done any vocational training (R. 302).  He does not have a driver's license because his legs go numb when he sits for too long (R. 317-318).

Plaintiff worked for the Post Office from 1995 until 2002 as a mail handler, unloading bags of mail and packages (R. 303).  He returned to work for three weeks in August of 2004, but was told by his doctor to stop working because the prolonged sitting caused his legs to go numb (R. 305-306).  Prior to his job at the Post Office, Plaintiff worked for a lawn care company beginning in 1992, doing both office work and working with heavy equipment (R. 304-305, 322).

Plaintiff typically wakes up at about 3:00 or 4:00 in the morning, and remains up until about 9:00 or 10:00 in the morning (R. 317).  He sleeps until about 2:00 in the afternoon, and spends most of the day in bed or on the couch.  He relies on his parents to care for his children,

2

cook, clean, do laundry and attend parent-teacher conferences.  He does not attend church nor go out to dinner or the movies because of the pain he experiences after sitting for a few minutes (R. 318).

Plaintiff stated he has had several injuries to his back sustained while at work and in an automobile accident, dating back to 1996 or 1997 (R. 306, 320).  He experiences pain extending from the middle of his shoulder blades to the base of his back, which radiates into his legs, particularly the right (R. 307).  The pain extends all the way to his feet if he remains sitting for long enough. He must stand up to relieve the pressure, but lying down helps the most.  He describes the pain as "constant" and "stabbing" and rates it at a seven or eight on a scale of ten (R. 308).

Plaintiff takes Vicodin, Flexeril and aspirin for his pain, though the Vicodin and Flexeril make him dizzy and groggy (R. 309).  The Vicodin takes his pain down to about a five on a scale of ten, but the relief only lasts for about half an hour to an hour (R. 311).  Plaintiff has undergone four twelve-week physical therapy sessions, and continues a home stretching regimen, but only experiences limited relief (R. 311-312).  He also uses a transcutaneous neural stimulation ("TNS") unit, but it just "chases" the pain around and does not provide any sustained relief (R. 312).

Plaintiff testified that his doctors have told him to "take it as easy as [he] possibly can because the slightest thing could cause paralysis" (R. 313).  In 2004, he had a series of epidural steroid and facet block injections over a six-week period performed by Sayeed Khan, M.D.,[1] but

---

[1] The hearing transcript provides a phonetic spelling of "Kai," but Plaintiff is presumably referring to Dr. Khan, who treated him between January and March of 2004 (R. 144-154).

3

other than the first two treatments, he did not experience any relief (R. 313-14).

Plaintiff spends the majority of his time at home lying down, which he characterized as his most comfortable position (R. 314).  He estimated that in an eight-hour period he spends seven to seven-and-a-half hours lying down (R. 315).  He stated that he had lost approximately twenty pounds over the past few years because he had been bedridden for almost five years (R. 302).  He is able to sit for only a few minutes before his legs begin to get numb (R. 316).  He can stand only briefly, because it is worse than walking, but he does not do much walking at all (R. 316-17).

### 2.   *Medical Evidence*

On August 24, 2002, Plaintiff began treatment with James E. Beale, M.D., due to lower back pain and a right ankle sprain (R. 137).  Dr. Beale noted that because of these ailments, Plaintiff was to be considered disabled for the next six weeks (R. 138).  On October 9, 2002, Plaintiff returned to Dr. Beale (R. 136).  Examination revealed tenderness at L4-5, and Dr. Beale diagnosed sciatica.  Dr. Beale also completed a disability certificate noting that Plaintiff was incapacitated between August 24 and October 11, 2002, but that he was able to return to light work beginning on October 12, 2002 (R. 135).

On October 25, 2002, Plaintiff returned to Dr. Beale seeking treatment for pain in his upper and lower back due to a work accident on October 24, 2002 (R. 134).  On examination, Plaintiff had a decreased range of motion of the spine, tenderness, spasms and straight leg raising of 90 degrees.  Plaintiff was diagnosed with dorsal and 4S sprain, and Dr. Beale recommended physical therapy, Motrin 800 mg, an MRI and four weeks off of work.  The  November 3, 2002, lumbar MRI revealed a broad central disc protrusion at L4/5, grade I retrolisthesis of L4 on

4

L5,with no spinal stenosis or neural foraminal narrowing;  grade II spondylolisthesis of L5 on S1

with bilateral spondylolysis of L5, and elongation and narrowing of the neural foramina present

at L5/S1 (R. 139).

On November 26, 2002, Plaintiff sought treatment from Dr. Beale complaining of lower

back pain, spasms in the lower back and leg pain that decreased when sitting and leaning

backward (R. 132).  On examination, Plaintiff had tenderness in the spine, and Dr. Beale

prescribed Celebrex.  Dr. Beale also wrote a disability letter stating that he was treating Plaintiff

for sciatica, spondylothesis, a bulging lumbar disc, bilateral spondylosis, degenerative disc

disease, neural foramina narrowing and 4S sprain (R. 132-33).

On December 17, 2002, Plaintiff was treated by Dr. Beale for complaints of persistent

lower back pain (R. 130).  Plaintiff reported that he had increased lower back pain after shopping

for three hours, and that he could not sit for prolonged periods.  On examination, Plaintiff's back

was tender, straight leg raising of 85 degrees and decreased range of motion.  Dr. Beale

diagnosed a bulging lumbar disc, spondylolisthesis L5-S1 and bilateral spondylolysis L5.  He

recommended physical therapy and prescribed Celebrex.  He also completed a disability letter

stating Plaintiff was disabled from work until further notice (R. 131).

On January 14, 2003, Plaintiff reported that sitting down increased numbness in his legs

(R. 128).  Dr. Beale prescribed Flexeril.  On February 11, 2003, Plaintiff complained of lower

back pain and a burning sensation, but decreased leg pain (R. 126).  On March 13, 2003, Plaintiff

continued treatment for lower back pain and pain in his left leg (R. 124).  On April 9, 2003,

Plaintiff reported continued lower back pain that was worse with activities of daily living

("ADL") (R. 122).  On June 17, 2003, Plaintiff reported that certain movements increased his

lower back pain, that he was "not doing anything," and that he had less leg pain unless he did more walking (R. 120). Dr. Beale continued Plaintiff on Celebrex and Flexeril. On July 15, 2003, Dr. Beale referred Plaintiff to Dr. Khan for pain management (R. 119). On August 12, September 10, and October 8, 2003, Plaintiff was treated for lower back pain (R. 112-17).

On November 19, 2003, Plaintiff returned to Dr. Beale with complaints of pain, tenderness, swelling in the spine, pain radiating down into the buttock area and pain worse at night with cold and wet weather (R. 110). On examination, Plaintiff had tenderness over the left paraspinal muscles, decreased range of motion, spasms and tenderness. Dr. Beale continued Plaintiff on Celebrex and Flexeril.

On January 13, 2004, Plaintiff began treatment with Dr. Khan (R. 152). He reported that nothing had helped his lower back pain, rated his pain at an eight out of ten, and stated that he experienced increased pain on ambulation, and occasional right leg numbness. On examination, Plaintiff had difficulty with a toe/heel walk, was tender over the left spine, had decreased flexion and extension, and had painful side movements (R. 152-53). Dr. Khan assessed Plaintiff with chronic low back pain, no radiation and possible lumbar facet syndrome (R. 153).

On January 19, 2004, Plaintiff was treated by Dr. Khan (R. 150). Plaintiff's range of motion was decreased, he rated his pain at a nine out of ten, and stated that his pain had increased 40% since the last visit. On a scale of zero to ten with zero as excellent and ten as worst, Plaintiff rated his sleep at a six, his mood at a seven, his satisfaction with the prescribed pain management regimen at a five, and his ability to return to work at a ten.

On March 8, 2004, Plaintiff rated his pain at a seven or eight out of ten, and Dr. Khan performed a LES injection at L4-5 (R. 149). On March 22, 2004, Plaintiff received another LES

6

injection, and rated is pain at a five (R. 146-47).  Plaintiff reported that the first injection "helped a lot," but the pain had returned with decreased intensity (R. 146).  On March 29, 2004, Plaintiff received a third LES injection (R. 144-45).  He rated his pain at a six, and reported that he experienced spasms, but the intensity had decreased (R. 144).  After performing a clinical exam, Dr. Khan opined that Plaintiff had lumbar facet syndrome (R. 145).

On May 5, 2004, Dr. Khan performed bilateral diagnostic lumbar facet medial nerve branch blocks, L4-L5 and L5-S1, as well as fluoroscopic guidance and interpretation (R. 160-61).  On May 12, 2004, Dr. Khan noted that Plaintiff's pain had significantly decreased and he performed the same procedures as on May 5 (R. 158-59).

On May 26, 2004, Plaintiff returned to Dr. Beale and reported that the injections had helped, yet his condition was unchanged on examination (R. 105).  On May 26, 2004, Dr. Khan performed a bilateral radiofrequency rhizotomy of the lumbar facet medial nerves, L4-L5 and L5-S1, as well as fluoroscopic guidance and interpretation (R. 156-57).  Dr. Khan advised Plaintiff to go for physical therapy (R. 157).

Plaintiff began physical therapy treatment on June 4, 2004, due to lower back pain and lumbar facet disease, and received treatment two or three times a week until November 26, 2004 (R. 162-198).  Over the course of his physical therapy, Plaintiff's pain improved, yet his gait was slow and guarded and he reported leg pain which increased with standing and walking.  His pain level fluctuated, being as low as a three on August 7, 2004, and as high as an eight on August 13, 2004 (R. 182, 187).

On July 7, 2004, Plaintiff reported to Dr. Beale that he had increased leg pain and numbness in his right leg (R. 103).  On August 4, 2004, Plaintiff complained of pain that became

7

worse when performing ADLs and during changes in the weather, as well as occasional numbness in his leg (R. 101). Dr. Beale completed a disability certificate stating that Plaintiff was totally incapacitated between October 24, 2002, and August 6, 2004, but was able to return to regular work on August 7, 2004 with restrictions of no prolonged walking or standing, no pushing or pulling, and no squatting or stooping (R. 100). On August 25, 2004, Plaintiff complained of back pain and numbness in his feet (R. 98). Dr. Beale completed a disability letter stating Plaintiff was totally disabled pending an MRI and EMG (R. 99).

On September 28, 2004, Plaintiff was evaluated by David L. Gatson, M.D. for low back pain with sciatica and bilateral numbness in the feet (R. 199-201). On examination, Dr. Gatson noted there was slight weakness of the right ileopsoas, hamstrings and quadriceps. An EMG showed normal insertional activity, recruitment and normal motor unit potentials. A nerve conduction study showed right and left sural nerve conduction mildly slow, posterior tibial nerve distal motor latencies increased bilaterally, across the ankle, left peroneal nerve distal motor latency slightly increased across the ankle, and right peroneal nerve conduction mildly slow below the knee (R. 199). Dr. Gatson's impression was that this was an abnormal EMG/nerve conduction study due to peripheral sensory neuropathy as well as multiple bilateral neuropathies mostly suggesting underlying compression involving the left distal peroneal nerve, and both posterior tibial nerves across the ankles (R. 199-200).

On October 6 and December 22, 2004, Plaintiff was treated by Dr. Beale for pain and leg numbness that was worse with ADLs (R. 96-97). On February 2, 2005, Dr. Beale prescribed Vicodin to treat Plaintiff's pain (R. 261).

On February 14, 2005, Plaintiff was evaluated by Leonard S. Boggs, M.D., P.C., a state

agency doctor (R. 204-212).  Plaintiff complained of lumbar pain, limitation of motion in the lower back, and bilateral foot numbness (R. 204).  Plaintiff stated that his pain was 60 on a scale of 0 to 100, and that he had difficulty sitting for long periods, walking long distances, getting off a chair, bending over, and lifting weights.  A general examination of the spine showed a somewhat stiff posture and examination of the thoracic spine revealed bilateral interscapular paraspinal muscle tenderness (R. 206).  Examination of the lumbosacral spine revealed bilateral lumbosacral paraspinal muscle spasm and tenderness upon palpation, discrete trigger points in the right sacroiliac groove with the pain radiating down the right buttocks in a sciatic distribution, active motion of the lumbosacral spine moderately restricted in all directions secondary to pain, straight leg raise of 60 degrees on the right and 70 degrees on the left and tender bilaterally, with Laségue positive on the right, and axial compression and distraction of the spinal column was antalgic (R. 206-07).  Dr. Boggs' impression was that Plaintiff had second-degree spondylolisthesis of L5 on S1 with bilateral spondylolysis of L5 and narrowing of the neural foramina, right more than left; Grade 1 spondylolisthesis of L4 on L5 with broad L4-L5 central disk protrusion; and chronic low back pain syndrome (R. 207).  Dr. Boggs noted that Plaintiff could not sit, stand, bend or stoop for long periods, could not squat and arise from squatting, and had difficulty getting on and off the examining table and climbing stairs (R. 210).

On March 13, 2005, Robin Wilkins, D.O., a state agency doctor, completed a physical residual functional capacity ("RFC") assessment after reviewing the medical record (R. 213-220).  Dr. Wilkins opined that Plaintiff could occasionally lift 20 pounds, frequently lift ten pounds, stand about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and that his ability to push/pull with his lower extremities was limited (R. 214).  He

further stated that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl, but never climb ladders/ropes/scaffolds (R. 215).  He also noted that Plaintiff should avoid concentrated exposure to vibration and hazards such as machinery, and he must avoid all exposure to heights (R. 217).

On March 23, 2005, Plaintiff was treated by Dr. Beale, who again prescribed Vicodin (R. 258).  On March 25, 2005, Dr. Beale wrote a letter, apparently in support of Plaintiff's worker's compensation claim related to his mail carrier job, stating that Plaintiff was placed on disability for two months beginning on August 24, 2002, due to lower back and right ankle pain (R. 256-57).  He explained that on October 24, 2002, Plaintiff re-aggravated his back condition while at work.  He described Plaintiff's movements as slow and guarded, and noted that he demonstrated decreased range of motion of the lumbar spine and had muscle spasms over the bilateral lumbar paraspinal muscles.  He recounted that Plaintiff continued treatment on a monthly basis, yet his condition remained unchanged.  Several months of physical therapy brought palliative relief of pain but no long-term relief, therefore it was discontinued.  Dr. Beale noted that Plaintiff had six epidural injections with no change in his condition, thus he opined that Plaintiff's condition is permanent.   Dr. Beale noted that he saw Plaintiff monthly following his reinjury in October 2002 stacking pallets on his job. (R. 256-57).  He concluded:

> is restricted from prolong standing and walking, constant and/or repetitive bending, twisting, and stooping; lifting or carrying more than 5 pounds. Etc. . . . I have reviewed his job description, and I feel that  he is unable to participate in the activities described.  Therefore I feel that [h]is condition is permanent, and entitles hi[m] to retirement disability.

(*Id.* at 257).

As noted below, Plaintiff's past  mail carrier job was heavy in exertional level (R. 323-24), and

Dr. Beale's March 25 letter does not discuss lighter exertional jobs.

On June 6, 2006, Plaintiff was treated by Dr. Beale for increased back pain that was worse with ADLs (R. 254). On November 1, 2006, Plaintiff was again treated by Dr. Beale for back pain (R. 252). He reported that he could not sleep, and that his pain was worse with ADLs and in cold weather. On December 20, 2006, and January 17, 2007, Plaintiff saw Dr. Beale, complaining of persistent back pain and left knee pain (R. 248-51). Dr. Beale prescribed water aerobics and an epidural steroid injection at L4-5.

On June 7, 2007, Dr. Beale completed a form for Plaintiff's counsel detailing his treatment of Plaintiff, and noting he had seen him 9 times since August 2004. (R. 262-272). He noted that Plaintiff's gait has a slight limp, his range of motion is 40 degrees flexion and zero degrees extension, straight leg raising 90 degrees while sitting and 60 degrees while supine, bilateral paraspinal muscle spasms, and motor strength rated at a three on a scale of zero to five. He stated that Plaintiff had side effects of drowsiness with Vicodin and Flexeril. He opined that Plaintiff's pain is moderately severe to severe, that his weakness or fatigue is moderately severe, that his complaints are credible, and that there are medical signs and laboratory findings that show the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms (R. 265). Dr. Beale noted that Plaintiff has been impaired at the level indicated since August 24, 2002, and that the impairment can be expected to last a lifetime. In response to questions defining sedentary and light exertional level work, he stated Plaintiff could perform neither (R. 266). He stated that Plaintiff could sit or stand/walk for less than one hour each in an eight-hour workday due to his spinal impairment and his need to elevate his leg (R. 268). He opined that Plaintiff could not use either of his hands for pushing and pulling of arm

controls on a regular and sustained basis, and that Plaintiff requires complete freedom to rest

frequently without restriction (R. 269).  Dr. Beale felt it was necessary that Plaintiff be able to lie

down or rest for substantial periods of time during the day to relieve pain.  He also noted that

Plaintiff would need to elevate his legs with prolonged sitting in order to be comfortable (R.

270).  To a question that paralleled the listing of impairments, he noted Plaintiff had a disorder

of the spine with "[l]umbar spinal stenosis . . . resulting in inability to ambulate effectively" with

examples of ineffective ambulation including needing a "walker, 2 crutches or 2 canes" (R. 271).

### *Evidence Submitted After the November 26, 2007, Decision*[2]

Plaintiff submitted a journal article to be considered by the Appeals Council after the

ALJ had rendered her decision (R. 279-95).  The article, published in 1965 in Acta Orthopedica

Scandinavica, is titled "In Vivo Discometry in Lumbar Discs with Irregular Nucleograms: Some

Differences in Stress Distribution between Normal and Moderately Degenerated Discs."  It is

intended to serve as scientific proof that sitting increases the loading forces on the discs to a

greater degree than in other positions, such as standing, walking and lying down.

### 3.   *Vocational Evidence*

VE Brooks characterized Plaintiff's past work as a mail handler as a semiskilled

occupation performed at a heavy exertion level; past work as a landscape laborer as unskilled

---

[2] Because this evidence was not before the ALJ when she rendered the final decision of the Commissioner, it cannot be considered for substantial evidence review.  *See Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992).  The only purpose for which this Court can consider this additional evidence is to determine whether this case should be remanded to the agency pursuant to the sixth sentence of 42 U.S.C. § 405(g).  *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993).  This Court may remand the case if the additional evidence is new and material, and if there was good cause for failure to incorporate the additional evidence into the record at a prior hearing.  42 U.S.C. § 405(g) (sentence six); *See Wyatt*, 974 F.2d at 685; *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

with heavy exertion (R. 323-24).

ALJ Revels asked the VE to consider an individual of the same age, education, and work experience of Plaintiff who would require work which is simple with the following limitations: only repetitive tasks, due to moderate limitations in ability to maintain concentration for extended periods, as well as to carry out detailed instructions; no working at hazardous heights or around dangerous machinery, including vibratory tools; no repetitive bending, stooping or twisting.  The work also must allow for the use of a cane, and a sit/stand option that does not require prolonged sitting or standing (R. 324-25).  VE Brooks testified that this hypothetical person would be able to work as an assembler, sorter/inspector or packager.  In total, there are 9,700 of these jobs (R. 325).

ALJ Revels then asked the VE to consider the same individual in the first question, but the individual was limited to lifting no more than five pounds at a time (R. 325).  VE Brooks testified that this would preclude all of the light jobs, but it still left 2,900 sedentary jobs the individual could perform including 1,700 assembly jobs, 600 sorting/inspection and 600 packaging (R. 325).

Plaintiff's counsel asked the VE if the jobs with the sit/stand option meant the individual could sit or stand at will, and not have to remain in one position or the other for a required amount of time.  VE Brooks testified that the individual would be able to sit or stand at will (R. 326).  Plaintiff's counsel then asked the VE if the hypothetical individual could only sit for one hour and stand/walk for one hour total during an eight-hour workday, lift no more than ten pounds occasionally, and rest for the remainder of the workday, whether the individual would be able to perform any jobs.  VE Brooks testified that the restrictions would preclude all work (R.

327).

### 4.      *The ALJ's Decision*

ALJ Revels found that Plaintiff met the insured status requirements of the Social Security

Act through December 21, 2008, and had not engaged in substantial gainful activity since

October 24, 2002, the alleged onset date (R. 25).  She found that Plaintiff's spondylolisthesis,

herniated disc, mild peripheral sensory neuropathy, and bilateral tarsal tunnel syndrome qualified

as severe impairments, which limited Plaintiff's ability to stand, walk and lift.  Yet, the

impairments did not meet or medically equal the requirements of any impairment listed in 20

C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526) (the

"Listing") (R. 26).

ALJ Revels evaluated the functional limitations resulting from Plaintiff's impairments, as

required by C.F.R. § 404.1529.  The ALJ found that Plaintiff retained the residual functional

capacity ("RFC") to perform a wide range of sedentary work but with lifting limited to five

pounds.  The work must allow for the use of a cane in ambulating and a sit/stand option that does

not involve: prolonged sitting; repetitive bending, stooping or twisting; use of vibratory tools;

operating in temperature extremes, at hazardous heights, or around dangerous machinery.  The

work must also be repetitive, routine or simple tasks because of moderate limitations in

Plaintiff's ability to concentrate for extended periods due to pain (R. 27).

Based on the evidence of record, the ALJ found that although Plaintiff's medically

determinable impairments could reasonably be expected to produce the alleged symptoms,

Plaintiffs statements concerning the intensity, persistence and limiting effects of the symptoms

were not entirely credible (R. 29).  ALJ Revels noted that there were limited objective findings,

14

and that Plaintiff went for more than a year without treatment between March 25, 2005, and June 6, 2006.  The ALJ also noted that there was nothing in Dr. Beale's clinical notes that suggested Plaintiff had to lie down for extended periods, or that he had difficulty sitting to the degree alleged.  ALJ Revels found that, based on the VE's testimony, Plaintiff was incapable of performing past relevant work, but there were a significant number of jobs in the national economy that Plaintiff could perform referring to the 1,700 assembly jobs, 600 sorting/inspection and 600 packaging in the regional economy identified by VE Brooks  (R. 29-30 referring to R. 325).[3]  Therefore, ALJ Revels concluded that Plaintiff was not disabled.

## II.   ANALYSIS

### A.   <u>Standard of Review</u>

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

---

[3] ALJ Revels said it was 800 packaging jobs, but 600 was the number VE Brooks identified (R. 325)

If the Commissioner seeks to rely on vocational expert testimony to carry the burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than his past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant aspects.  A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which Plaintiff can perform.  *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (a hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

### B.   Factual Analysis

In his motion for summary judgment, Plaintiff argues that he should be granted benefits, or, alternatively, have his case remanded, because the ALJ's decision was not based on substantial evidence (Dkt. #18, p. 4).  Plaintiff argues that 1) the ALJ erred when she rejected the opinion of Plaintiff's treating physician; 2) the ALJ erred when she found Plaintiff not credible; and 3) the ALJ failed to meet her burden at Step Five (*Id.*, p. 16).

### 1.   *Opinion of Plaintiff's Treating Physician*

In general, more weight is given to the opinions of treating physicians.  Additionally, if

the treating physician's opinion is well-supported by – and not inconsistent with – other

substantial evidence of record, it is given controlling weight.  20 C.F.R. § 404.1527(d)(2).  If

controlling weight is not given to the treating physician's opinion because it is not well-

supported or consistent with other substantial evidence, then the Commissioner will determine

what weight is to be given to the opinion based upon the following factors:

> (1) the length, frequency, nature and extent of the treatment relationship, including the kind and extent of examination and testing sought from specialists or independent laboratories;

> (2) the supportability of the medical opinion based on medical signs and laboratory findings, with better explanations being given more weight, and whether the opinion includes all of the pertinent evidence as well as opinions of treating and other examining sources;

> (3) the consistency of the opinion with the record as a whole;

> (4) specialty, with greater weight given to relevant specialists;

> (5) any other factors which tend to support or contradict the opinion.

20 C.F.R. §§ 1527(d)(2)-(6).

Here, the ALJ found that Dr. Beale's questionnaire dated June 7, 2007, painted a picture

of Plaintiff that was too restrictive and not supported by the weight of the evidence – not even

his own treatment records.   Yet, ALJ Revels did accept Dr. Beale's five pound lifting limitation

over the 20 pounds found by the state medical advisor, Dr. Wilkins.   The Sixth Circuit has held

that "the Secretary is not bound by the treating physician's opinions, and that such opinions

receive great weight only if they are supported by sufficient clinical findings and are consistent

with the evidence." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (quoting

*Bogle v. Sullivan*, 998 F.2d 342, 357-58 (6th Cir. 1993)).  While ALJ Revels did not address

each of the factors explicitly, she noted that Dr. Beale furnished no findings that supported the

17

"drastic limitations" on standing, walking and sitting, or any reason why Plaintiff would have to elevate his legs (R. 29). She also stated that Plaintiff is more limited in his ability to stand and walk than was found by the state medical reviewer, Dr. Wilkins, but there was nothing in the treatment records of Dr. Beale that would lead to the strict limitations indicated by his last assessment. A careful review of Dr. Beale's two submissions apparently solicited by Plaintiff's counsel also suggest some reasons to discount their reliability. Dr. Beale's March 25, 2005, letter indicated monthly visits by Plaintiff since Dr. Beale October 2002 reinjury at work yet the June 7, 2007, form stated that he had seen him 9 times since August 2004 (Compare R. 256 with R. 262-272). Indeed ALJ Revels notes the one year gap in treatment from that March 2005 visit and the June 6, 2006, visit to Dr. Bale (R. 27 Referring to R. 254.) Also, Dr. Beal's June 2007 forms indicate Plaintiff has spinal stenosis sufficiently severe to preclude effective ambulation (i.e. needing a walker, or two canes or crutches) (R. 271) whereas his earlier notation on Plaintiff's gait only indicated a slight limp (R. 263).[4] Also, ALJ Revels points out that the only MRI in the record did not confirm stenosis (R. 29 referring to R. 139). Accordingly, there is substantial evidence for ALJ Revels' to discount Dr. Beale's June 7, 2007, opinion, where it is not supported by his own treatment records from the previous years.

## 2. *The ALJ's Credibility Determination*

The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record. *See Gooch v. Sec'y of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The ALJ must, however, do more than

---

[4] While Plaintiff uses a cane for walking, he apparently did not have it at the hearing, having left It in his brother's car (R. 324).

say the testimony is not credible based on generalities or merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain. *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994). In order for an ALJ to properly discredit a claimant's subjective testimony, the credibility determination must be accompanied by a detailed statement explaining the ALJ's reasons.

ALJ Revels found that Plaintiff's "medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (R. 29).

Here, Dr. Bale's reports discussed above seem based on his fully crediting the subjective reports of his patient, which is subject to being discounted if the ALJ has adequate reasons for rejecting the credibility of the claimant on the scope, frequency and intensity of his symptoms. ALJ Revels found that limitations on prolonged walking precluded light work, but there was simply no support in Dr. Beale's treatment records supporting Plaintiff's claimed need to lie down for the extensive periods he claims. Again,  ALJ Revels noted that Plaintiff went for more than one year without any treatment, and that his MRI revealed no stenosis.  Again, ALJ Revels credits many of Plaintiff's claims in limiting him to 5 pounds, his need to use a cane, and a sit/stand option at will, it is only the more extreme claims that are discounted.  While the ALJ's decision would have been improved by a more thorough and extensive analysis of the record supporting her credibility finding, on this record a reasonable ALJ could find that Plaintiff was not entirely credible and thus discount Plaintiff's more extreme claims.

### 3.  *The ALJ's RFC Finding*

ALJ Revels found that Plaintiff has the RFC to perform a range of sedentary work limited by a number of factors including lifting no more than five pounds, no stooping or twisting, and sit/stand option at will (R. 30).  Plaintiff contends that SSR 96-9p requires the ALJ to specify how much time is to be spent standing and sitting when giving a sit/stand option as part of the RFC (Dkt. #18, p. 21).  Plaintiff also contends that the RFC should have accounted for Plaintiff's need to lie down for substantial periods of time during the day.

SSR 96-9p states that "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."  Contrary to Plaintiff's contention, this does not mean that the RFC must contain increments of time to be spent in each position where, as here, the RFC states unambiguously that Plaintiff needs to be able to sit or stand "at will."  *Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir. 2008).  As discussed above, ALJ Revels properly discounted Plaintiff's need to lie down for extended periods of time, thus there is no error in the RFC finding.

### 4. *The ALJ's Step Five Determination*

Plaintiff contends that the ALJ failed to meet her burden of showing that Plaintiff is able to perform a substantial number of jobs in the national economy.  Plaintiff argues that the ALJ should have required the VE to provide the DOT codes associated with each of the jobs she listed, because without the codes it is impossible to determine whether a conflict exists between the VE's testimony and the DOT.

SSR 00-4p states in part that "[w]hen a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that . . . evidence and information provided in the DOT."

20

The ALJ satisfies this requirement by "[a]sk[ing] the VE or VS if the evidence he or she has provided conflicts with the information provided in the DOT; and [i]f the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." Here, ALJ Revels satisfied the first requirement by asking VE Brooks if her testimony was consistent with the DOT (R. 325-26).

Plaintiff relies on a Seventh Circuit decision for the proposition that when a conflict is identified in the VE's testimony the ALJ is required to investigate further. *Overman v. Astrue*, 546 F.3d 456 (7th Cir. 2008). While this is true, as it follows from SSR 00-4p, the facts in *Overman* are different from those in the instant case. In *Overman*, the VE gave testimony while being cross-examined by the plaintiff's attorney that conflicted with testimony he had given earlier while being questioned by the ALJ. The Seventh Circuit held that this conflicting testimony should have been apparent to the ALJ, which would have required a "reasonable explanation" under SSR 00-4p. *Id.* at 463-64. Here, the "conflict" that Plaintiff identifies in VE Brooks' testimony occurred when Plaintiff's counsel questioned her regarding the sit/stand option. The VE's testimony that the hypothetical individual would be able to perform the jobs she identified and sit or stand "at will" did not conflict with any of her earlier testimony in such a way that it should have been "apparent" to the ALJ. Further, the *Overman* court stated that the conflicts had to be "obvious enough that the ALJ should have picked up on them without any assistance . . . ." *Id.* at 463. Plaintiff's reliance on *Overman* is misplaced.

It is Plaintiff's position that there were many conflicts between the VE's testimony and the DOT. The first "conflict" he notes is that an individual who cannot sit for a prolonged period (per the ALJ's RFC determination) cannot perform the six hours of sitting required by sedentary

work.  Yet, VE Brooks testified that all of the sedentary jobs she identified allowed for the
individual change between sitting and standing at will.  The second "conflict" Plaintiff identifies
is that, based on their names, the jobs cited by the VE necessitate using one's hands, thus an
individual who requires the use of a cane would be precluded from performing the jobs.  The
ALJ's RFC determination, however, only states that Plaintiff requires the use of a cane for
ambulation, not for merely standing in place.  The third "conflict" indicated by Plaintiff is that an
individual who is precluded from sitting for prolonged periods must, by process of elimination,
spend much of the workday standing.  Because of this, in order to perform a sedentary job
(which allows for six hours of sitting), the individual would be required to bend frequently in
order to reach items needed to perform the job.  While this is certainly an interesting logical
claim, it is difficult to conclude that this is a conflict that should have been "obvious" to the ALJ.
The Sixth Circuit held, in an unpublished opinion, that an ALJ is not required to "conduct his or
her own investigation into the testimony of a vocational expert to determine its accuracy,
especially when the claimant fails to bring any conflict to the attention of the administrative law
judge." *Ledford v. Astrue*, 311 Fed. App'x. 746, 757 (6th Cir. 2008) (citing *Martin v. Comm'r of
Soc. Sec.*, 170 Fed. App'x. 639, 374-75 (6th Cir. 2006)).  Accordingly, ALJ Revels met her
burden at Step Five.

### 5.   *Evidence Submitted to the Appeals Council*

In conjunction with his request for review of the ALJ's decision by the Appeals Council,
Plaintiff presented evidence to the Appeals Council.  The evidence, which was submitted to the
Appeals Council which then denied review, cannot be used to reverse the Commissioner's
decision on appeal.  While the new evidence becomes part of the administrative record, it is the

ALJ's decision that is then under federal court review, and the evidence cannot be used to reverse the decision, because it was not before the ALJ. *Cotton v. Secretary of Health and Human Services*, 2 F.3d 692, 696 (6th Cir.1993), citing *Willis v. Sec'y of Health and Human Servs.*, 727 F.2d 551, 553-54 (6th Cir. 1984) (the record is closed at the administrative law judge level). Where a party presents new evidence to the Appeals Council that denies review or to the federal court for the first time, the Court can consider the evidence only to determine if a remand is appropriate under sentence six of 42 U.S.C. § 405(g) for further consideration of the evidence, but only if the party seeking remand shows that the new evidence is material.

In this case, Plaintiff has not provided this Court with an argument for a sentence six remand. Accordingly, Plaintiff has waived this argument. *See Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991). Even if Plaintiff had argued for a sentence six remand based on the new evidence, it would fail being new. The first page of the article indicates it was published in 1965 (R. 279) and an online search confirms that.[5] It is also questionable if it would satisfy the materiality test. The journal article submitted to the Appeals Council was intended to serve as scientific proof that sitting increases the loading forces on the discs of the spine to a greater degree than in other positions, such as standing, walking and lying down. Yet, it appears that ALJ Revels took this into account, at least to some extent, in the RFC by stating that Plaintiff could not sit for prolonged periods and providing he option to stand at will.

_____

[5] In vivo Discometry in Lumbar Discs with Irregular Nucleograms Some Differences in Stress Distribution between Normal and Moderately Degenerated Discs by, Alf Nachemson,  Biomechanics Laboratory, Department of Orthopaedic Surgery, University of Gothenburg, Sweden Online Publication Date: 01 January 1965. http://pdfserve.informaworld.com/96353_768420410_783263224.pdf ( Accessed July 27, 2009 )

**III.    RECOMMENDATION**

For the reasons stated above, it is **RECOMMENDED** that Defendant's motion be **GRANTED**.  The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d at 401; *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: July 28, 2009                                   s/Steven D. Pepe
Ann Arbor, Michigan                               United States Magistrate Judge


I certify that a copy of the foregoing document was mailed to all parties and counsel of record via electronic means or U.S. Mail on July 28, 2009.

                                                            s/Diane Opalewski
                                                            Case Manager